UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

|  |  |  |
|---|---|---|
| | x | |
| | : | Case No.: 4:14-cv-00159-ERW |
| JOHN PRATER, on behalf of himself and others similarly situated, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| MEDICREDIT, INC. and THE OUTSOURCE GROUP, INC., | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | x | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**Introduction**

On January 28, 2014, John Prater filed a class action complaint against Medicredit, Inc. and

The Outsource Group, Inc. (together, "Defendants"), asserting putative class claims arising from

alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227—which

makes it unlawful for any person to use an automatic telephone dialing system ("ATDS") or an

artificial or prerecorded voice to make any call to a cellular telephone number without the prior

express consent of the called party.

Mr. Prater now seeks preliminary approval of the parties' Class Action Settlement

Agreement and Release ("Agreement").[1] Mr. Prater and his counsel strongly believe the

settlement—which calls for the creation of a $6.75 million common fund from which participating

---

[1]     The Agreement and its exhibits are appended to the Declaration of Michael L. Greenwald, attached hereto as Exhibit A. Capitalized terms not defined herein have the same meanings as set forth in the Agreement.

Class Members will receive a pro-rata portion after deducting attorneys' fees, expenses, and claims administration costs—is fair, reasonable, and adequate, and in the best interests of the Class. As more fully set forth below, Mr. Prater respectfully requests that the Court enter the accompanying order granting preliminary approval of the settlement. Defendants do not oppose this relief.

### Summary of the Settlement

**A.      Mr. Prater's litigation efforts resulted in an excellent recovery.**

The parties vigorously litigated this matter through the close of discovery. The issues in this case were complex, including, *inter alia*, whether Defendants utilized an ATDS as defined by the TCPA, the ascertainability of the Class, whether Class Members consented to the calls they received from Defendants, the interrelationship of the Defendants, the propriety of class certification, the effect of FCC rulings and potential rulings, and the measure of damages available to Class Members. Accordingly, Plaintiff's counsel conducted extensive fact discovery, and also spent significant time and effort on motion practice and issues related to the propriety of class certification.

The parties participated in a full-day mediation with the Hon. Wayne C. Andersen (Ret.) in April 2015. Then, under Judge Andersen's guidance, the parties engaged in continued settlement negotiations over the weeks following their mediation session. Ultimately, on May 6, 2015, the parties agreed in principle to a resolution of this case and, on July 1, 2015, entered into the Agreement. The settlement resolves this litigation on a nationwide basis.

**B.      The settlement provides for a common fund of $6.75 million and direct mail notice to all known Class Members.**

The Agreement defines a class under Rule 23(b)(3) comprised of all persons and entities throughout the United States (1) to whom Medicredit, Inc. and/or The Outsource Group, Inc. made or caused to be made one or more telephone calls, (2) directed to a number assigned at the time of the call(s) to a cellular telephone service (whether the number was assigned to the person receiving

2

the call or not), (3) by using an automatic telephone dialing system and/or an artificial or prerecorded voice, (4) from January 28, 2010 through the date of the Preliminary Approval Order, and (5) for whom Medicredit, Inc., The Outsource Group, Inc. and/or the Released Parties did not have a valid consent for such call or calls at the time thereof.

Participating Class Members will receive a pro-rata share of the $6.75 million settlement fund, after expenses are deducted. Thus, even if every Class Member participates in the settlement, and after deducting attorneys' fees, expenses, and settlement administration costs, each stands to receive in excess of $9.05 in cash[2]—a result that compares favorably to other TCPA settlements. And, while the exact per-class-member recovery is unknown, given historical claims rates in TCPA cases, each participating Class Member is likely to receive more than $175.00.

Subject to Court approval, the costs of notice and administration, an award of attorneys' fees and expenses, and an incentive award for Mr. Prater also will be deducted from the $6.75 million fund. To that end, Defendants agree not to oppose an incentive award to Mr. Prater of $20,000, as well as the reimbursement of Class Counsel's expenses not to exceed $35,000, and an award of attorneys' fees not to exceed one-third of the fund.

The Agreement also requires an ample notice program, including direct mail notice to each known member of the Class as well as a website devoted to the administration of the settlement. The Class Administrator will take all reasonable steps necessary, including the use of reverse phone

---

[2]     Defendants have identified 735,990 accounts containing a code indicating that the call recipient informed Defendants that they called the wrong number. However, not all of those accounts involved calls to cellular telephones. As part of the claims administration process, the administrator will perform a "scrub" of these telephone numbers to determine which were assigned to cellular telephones, as opposed to landlines. The parties estimate that this process will result in approximately 60 percent of the accounts involving a call to a cellular telephone, or approximately 450,000 class members—although this number could be higher or lower. Plaintiff will update the Court in his final approval papers regarding the exact number of accounts containing a cellular telephone number.

number look-ups to obtain current addresses based on cell phone records, to ensure that Class

Members receive direct mail notice where reasonably practicable.

**Argument**

**A.      The proposed Settlement Class satisfies the requirements of Rule 23 and should be certified for settlement purposes.**

To certify the proposed Class, Mr. Prater must satisfy each of the four requirements of Rule

23(a), commonly referred to as numerosity, commonality, typicality, and adequacy of representation,

as well as Rule 23(b)(3). *See St. Louis Heart Center, Inc. v. Vein Centers for Excellence, Inc.*, No.

12-174, 2013 WL 6498245, at *2 (E.D. Mo. Dec. 11, 2013) (certifying TCPA class action).[3] And

particularly because certification is sought in the context of a settlement, the requirements of Rule

23(a) and 23(b)(3) are readily satisfied. *See*, *e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620

(1997) ("Confronted with a request for settlement-only class certification, a district court need not

inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule

Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").

**1.      The members of the Class are sufficiently numerous.**

The first requirement of Rule 23(a) is that the class must be "so numerous that joinder of all

members is impracticable." Fed. R. Civ. P. 23(a)(1).  It is undisputed that "the proposed Settlement

Class here consists of several thousand [members] who are geographically dispersed, making joinder

impracticable. Thus, the Settlement Class easily satisfies the numerosity requirement." *In re Charter*

*Commc'ns, Inc. Sec. Litig.*, No. 02-1186, 2005 WL 4045741, at *11 (E.D. Mo. June 30, 2005); *see*

*also St. Louis Heart Center*, 2013 WL 6498245, at *6 (numerosity met for proposed TCPA

settlement class of "thousands of doctors and medical centers" that received faxes). Here, because

---

[3]      Emphasis is added, and internal quotations and citations are omitted, unless otherwise noted.

the parties estimate that the Class contains approximately 450,000 members throughout the United

States, numerosity is satisfied.

### 2.    Questions of law and fact are common to the Class.

"Rule 23(a)(2)'s 'commonality' requirement is satisfied if a claim arises out of the same legal

or remedial theory." *In re Charter*, 2005 WL 4045741, at *11. "The plaintiff must show that 'a

classwide proceeding will generate common answers apt to drive the resolution of the litigation.'" *St.

Louis Heart Center*, 2013 WL 6498245, at *6 (citing *Bennett v. Nucor Corp.*, 656 F.3d 802, 814 (8th

Cir. 2011)). Importantly, Rule 23(a)(2) is construed permissively: "the interests of the various

plaintiffs do not have to be identical to the interests of every class member; it is enough that they

share common objectives and legal or factual positions." *In re Charter*, 2005 WL 4045741, at *11.

Here, Class Members' claims stem from the same factual circumstances, in that Defendants

made calls to Class Members' cellular telephones, using an ATDS, which are alleged to have

violated the TCPA. *See St. Louis Heart Center*, 2013 WL 6498245, at *6 ("Whether or not those

advertisements comport with the TCPA and the associated rules promulgated by the FCC is one of

many examples of questions that will be answered on a classwide basis."). Accordingly, the

commonality requirement is satisfied.

### 3.    Mr. Prater's claims are typical of the claims of Class Members.

Typicality requires that "the claims or defenses of the representative parties are typical of the

claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  Like commonality, the test for typicality

is not onerous. *St. Louis Heart Center*, 2013 WL 6498245, at *6.  Simply, "[t]his prerequisite can be

met if the claims or defenses all stem from a single event or if the plaintiff can demonstrate that the

class shares the same or similar grievances." *Id.*; *see also Kelly v. Phiten USA, Inc.*, 277 F.R.D. 564,

568 (S.D. Iowa 2011) ("The burden is fairly easily met so long as other class members have claims

similar to the named plaintiff.").

5

Here, Defendants called the cellular telephone of Mr. Prater, like the other members of the Class, after having been notified that they had reached the wrong party and to stop calling.  Because Mr. Prater unquestionably is a member of the Class, he possesses the same interests, asserts identical claims, and seeks identical relief on behalf of members of the Class.  As a result, Mr. Prater's claims are typical of those of the Class.  *Id.*; *see also In re Charter*, 2005 WL 4045741, at *12 (typicality satisfied where "Lead Plaintiff, on behalf of all members of the Class, sought to recover damages for losses arising out of the same course of conduct, and uniformly affecting all members of the Class.").

### 4.      Mr. Prater and his counsel will continue to fairly and adequately protect the interests of the Class.

Next, the Court must determine if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To meet this criterion, the representative Lead Plaintiff's interests must be consistent with, and not antagonistic to, those of the Class. Moreover, Lead Counsel must be qualified, competent and diligent." *In re Charter*, 2005 WL 4045741, at *12. As set forth above, Mr. Prater's claims are aligned with the claims of the Class. Mr. Prater therefore has every incentive to vigorously pursue the Class Members' claims, as he has done to date.  As Mr. Prater explained during his deposition, he has actively participated in this case, is intimately knowledgeable of the claims he is prosecuting, is in regular communication with his attorneys, is fully committed to this case, and is firmly committed to protecting the interests of the Class. To that end, Mr. Prater traveled from Dallas to St. Louis for his deposition, and traveled to Chicago to attend mediation. Moreover, the excellent recovery obtained for the Class is a testament to Mr. Prater's hard work and dedication, as is the fact that he declined multiple individual settlement offers that would have provided him with far more money than he will obtain here—had he chosen to abandon the Class. *See* Docs. 13, 14 (motion to strike $34,500 offer of judgment to Mr. Prater); Doc. 27 (order striking offer of judgment).

In addition, Mr. Prater retained the services of Greenwald Davidson Radbil PLLC, which has ample experience representing plaintiffs in class actions, including nationwide TCPA class actions. Mr. Prater's counsel therefore are well-equipped to handle the instant litigation, as their work in this case demonstrates.  *See, e.g.*, *Jones v. I.Q. Data Int'l, Inc.*, No. 14-00130, 2015 WL 2088969, at *2 (D.N.M. Apr. 21, 2015) (preliminarily approving TCPA class action settlement and appointing Greenwald Davidson Radbil PLLC class counsel); *Ritchie v. Van Ru Credit Corp.*, No. 12-01714, 2014 WL 3955268, at *2 (D. Ariz. Aug. 13, 2014) (approving TCPA class action settlement and appointing Greenwald Davidson Radbil PLLC class counsel).[4]

Mr. Prater and his counsel therefore satisfy Rule 23(a)(4) and 23(g). *See In re Charter*, 2005 WL 4045741, at *12 ("Plaintiff has diligently championed the interests of the Class throughout the litigation. [He] has also retained counsel well experienced in federal class action [] litigation. The Court concludes the representatives of the class are more than adequate.").

### 5.      Common questions predominate over any individual issues.

In addition to meeting the four requirements of Rule 23(a) and the requirements of Rule 23(g), parties seeking class certification must demonstrate that the action is maintainable under one of the three subsections of Rule 23(b). Here, the Class satisfies Rule 23(b)(3).

The predominance factor "tests whether proposed classes are sufficiently cohesive to warrant

---

[4]      Greenwald Davidson Radbil PLLC has been appointed class counsel in nearly a dozen cases in the past 18 months. *See, e.g., Rhodes v. Olson Associates, P.C. d/b/a Olson Shaner*, --- F. Supp. 3d ----, 2015 WL 1136176, at *14 (D. Colo. Mar. 13, 2015); *Roundtree v. Bush Ross, P.A.*, 304 F.R.D 644, 661 (M.D. Fla. 2015); *Gonzalez v. Dynamic Recovery Solutions, LLC*, Nos. 14-24502, 14-20933, 2015 WL 738329, at *2 (S.D. Fla. Feb. 23, 2015); *Esposito v. Deatrick & Spies*, *P.S.C.*, No. 13-1416, 2015 WL 390392, at *2 (N.D.N.Y. Jan. 28, 2015); *Green v. Dressman Benzinger Lavelle, PSC*, No. 14-00142, 2015 WL 223764, at *2 (S.D. Ohio Jan. 16, 2015); *Donnelly v. EquityExperts.org, LLC*, No. 13-10017, 2015 WL 249522, at *2 (E.D. Mich. Jan. 14, 2015); *Hunter v. Nicholas Fin. Corp.*, No. 0:13-cv-61126-DMM, Doc. 32 (S.D. Fla. Apr. 28, 2014); *White, et al. v. Scott E. Alexander*, No. 3:12-cv-06050-RBL (W.D. Wash. Feb. 28, 2014); *Sharf v. Fin. Asset Resolution, LLC*, 295 F.R.D. 664, 671 (S.D. Fla. Jan. 16, 2014).

adjudication by representation." *Amchem*, 521 U.S. at 623. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).

Here, the central legal issue before the Court is whether Defendants' automated calls to the members of the Class violated the TCPA. This is sufficient to satisfy the predominance requirement. *St. Louis Heart Center*, 2013 WL 6498245, at *9 (predominance met in TCPA class action); *see also Malta v. Fed. Home Loan Mort. Corp.*, No. 10-1290, 2013 WL 444619, at *4 (S.D. Cal. Feb. 5, 2013) ("The central inquiry is whether Wells Fargo violated the TCPA by making calls to the class members. Accordingly, the predominance requirement is met."). Further, predominance is buttressed because each member of the Class "is eligible to receive an identical pro-rata share of the settlement fund, suggesting that there is no need for an individualized determination of the share each class member is entitled to." *Lo v. Oxnard European Motors, LLC*, No. 11-1009, 2011 WL 6300050, at *3 (S.D. Cal. Dec. 15, 2011).

### 6.    Class treatment is superior to other available methods for the fair and efficient adjudication of the claims here.

To determine if the superiority requirement of Rule 23(b)(3) is satisfied, the Court must consider: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

Because the claims in this case all arise from the same conduct on the part of Defendants, a class action is the superior vehicle for determining the rights of absent class members. *St. Louis*

*Heart Center*, 2013 WL 6498245, at \*11 ("Because the statutory damages available to each individual class member are small—at most $1500 per violation—it is unlikely that the class members have interest in individually controlling the prosecution of separate actions. This action involves thousands of plaintiffs, each with a relatively small, nearly identical claim, who might not otherwise seek or obtain relief absent a class action. . . . Although there may be some administrative tasks for the parties, such as matching [telephone] numbers to updated contact information, that is not enough to outweigh the benefits of treating these claims all together. All in all, a class action is superior to other methods of adjudicating this controversy.").

**B.     The Court should preliminarily approve the settlement as "fair, reasonable, and adequate" under Rule 23(e).**

Rule 23(e) requires that the Court make a preliminary determination of fairness:

> Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by the parties. If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. . . . The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

MANUAL FOR COMPLEX LITIGATION §21.632 (4th ed. 2004); *see also* 4 ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS, §11.25 (4th ed. 2002). After the preliminary fairness evaluation has been made, the class has been certified for settlement purposes, and notice has been issued, the Court then holds a final fairness hearing to determine whether the proposed settlement is truly fair, reasonable, and adequate. *See* MANUAL FOR COMPLEX LITIGATION §21.633-34; 4 NEWBERG, *supra* at §11.25.

Preliminary approval requires only that the Court evaluate whether the settlement: (1) was negotiated at arm's-length; and (2) is within the range of possible litigation outcomes such that

"probable cause" exists to disseminate notice and begin the formal fairness process. *See* MANUAL

FOR COMPLEX LITIGATION §21.632-33. The Eighth Circuit has identified four factors used to

assess whether a settlement proposal is fundamentally fair, adequate, and reasonable: (1) the merits

of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial

condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to

the settlement. *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir.

2005); *Van Horn v. Trickey*, 840 F.2d 604, 606 (8th Cir. 1988). However, in making its preliminary

fairness assessment, the court may also consider "procedural fairness to ensure the settlement is not

the product of fraud or collusion," the "experience and opinion of counsel on both sides"—including

whether the "settlement resulted from arm's length negotiations, and whether a skilled mediator was

involved"—and also "the settlement's timing, including whether discovery proceeded to the point

where all parties were fully aware of the merits." *Bredthauer v. Lundstrom*, Nos. 10-3132, 10-3139,

10-326, 2012 WL 4904422, at *3 (D. Neb. Oct. 12, 2012).

Here, each relevant factor supports the conclusion that the settlement is fundamentally fair,

reasonable, and adequate. And in applying these factors, this Court should be guided foremost by the

"long-standing policy favoring settlements of civil actions in federal courts." *In re Charter*, 2005

WL 4045741, at *4 ("this policy is especially applicable to class action litigation"). By their very

nature, because of the uncertainties of outcome, difficulties of proof, and lengthy duration, class

actions readily lend themselves to compromise. *See In re Wireless Tel. Fed. Cost Recovery Fees

Litig.*, No. 03-015, 2004 WL 3671053, at *11 (W.D. Mo. Apr. 20, 2004) ("It is the surety of

settlement that makes it a favored policy in dispute resolution as compared to unknown dangers and

unforeseen hazards of litigation."). Moreover, the Court should give a presumption of fairness to

arm's-length settlements reached by experienced counsel. *In re Charter*, 2005 WL 4045741, at *5.

10

### 1.     The strengths and weaknesses of Mr. Prater's case, weighed against the terms of the settlement, favor preliminary approval.

"The most important consideration in deciding whether a settlement is fair, reasonable, and adequate is the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement." *In re Wireless*, 396 F.3d at 933.  Here, the parties disagree about the merits, including the likelihood of potential FCC action foreclosing Mr. Prater's claims. As well, there is substantial uncertainty about whether a class would be certified. Given these considerations, preliminary approval of the settlement is appropriate.

In evaluating the fairness of the consideration offered in settlement, it is not the role of the court to second-guess the negotiated resolution of the parties. The Eighth Circuit has noted: "We have recognized that a class action settlement is a private contract negotiated between the parties. Rule 23(e) requires the court to intrude on that private consensual agreement merely to ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned." *Id*. at 934. The issue is not whether the settlement could have been better in some fashion, but whether it is fair: "Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027.

Here, the settlement provides substantial, immediate cash relief to the Class. The settlement requires Defendants to create a common fund of $6.75 million. From this fund, each Class Member who timely submits a claim will receive an equal pro-rata share after expenses are deducted. Thus, even if all Class Members submit claims, and after deducting attorneys' fees, expenses, and administrative costs, each person should receive in excess of $9.05 in cash. If fewer people submit claims, each claimant's share will increase proportionally. Thus, if 5 percent submit claims—a typical claims rate for a TCPA class action—each person will receive more than $175.00. This

recovery is an exceptional result for the Class, and compares favorably to other TCPA class action settlement. For example, in *Lees v. Anthem Ins. Cos. Inc., d/b/a Anthem Blue Cross Blue Shield*, Judge Limbaugh, Jr. granted preliminary approval of a TCPA class action settlement that made available between $4.75 million and $6.25 million for approximately 830,000 class members. Case No. 4:13-cv-01411-SNLJ, Doc. 46 (E.D. Mo. Sept. 29, 2014); *see also, e.g.*, *Allen v. JP Morgan Chase Bank, N.A.*, No. 13-08285, Doc. 55 (N.D. Ill. May 12, 2015) (seeking preliminary approval of $10.2 million settlement for approximately 2.25 million class members; minimum recovery of less than $3 per class member after deducting attorneys' fees and costs); *In re Capital One Tel. Consumer Prot. Act Litig.*, --- F. Supp. 3d ----, 2015 WL 605203, at *3, *19 (N.D. Ill. Feb. 12, 2015) (approving class settlement where, after accounting for fees and expenses, "[i]f all 17,522,049 class members had filed a claim, they would have received $2.72 each," but due to claims rate, participants ultimately received at least $39.66); *Connor v. JPMorgan Chase Bank, N.A.*, No. 10-01284 (S.D. Cal. Feb. 5, 2015) (class members would have received $3.97 each if all submitted claims); *Malta*, 2013 WL 444619, at *4, *7 ("If each of the potential 5,887,508 eligible claimants filed claims, they would receive approximately $2 each."); *Adams v. Allianceone Receivables Mgmt., Inc.*, No. 3:08-cv-00248-JAH-WVG, Doc. 113 (S.D. Cal. Apr. 23, 2012) (settlement of $9 million to a class of 6,079,411—or about $1.48 per class member if every class member submitted a claim).[5]

---

[5]      *See also Spillman v. RPM Pizza, LLC*, No. 10-349, 2013 WL 2286076, at *4 (M.D. La. May 23, 2013) (approving settlement that provides up to $15 cash payment for TCPA violation); *Sarabri v. Weltman, Weinberg & Reis Co., L.P.A.*, No. 10-1777, 2012 WL 3991734, at *3 (S.D. Cal. Aug. 27, 2012) (maximum of $70 recovery per class member); *Lo*, 2011 WL 6300050, at *5-6 (minimum payment of $131.69, which the parties represented was "considerably above the range of amounts paid to settlement class members in other TCPA class actions that have been recently approved for settlement"); *In re Jiffy Lube Int'l, Inc.*, No. 11-02261 (S.D. Cal.) (class members entitled to vouchers for services valued at $17.29 or a cash payment of $12.97); *Bellows v. NCO Fin. Sys., Inc.*, No. 07-01413, 2008 WL 4155361, at *9 (S.D. Cal. Sept. 5, 2008) (up to $70 per participating class member).

**2.    The complexity and expense of further litigation favor preliminary approval.**

In addition to the substantial risks and uncertainty inherent in continued litigation, the parties face the certainty that further litigation would be expensive, complex, and time-consuming. *See In re Charter*, 2005 WL 4045741, at \*8 ("Continued litigation would likely take years, requiring the expenditure of millions of dollars."). This would entail continuing discovery obligations, including expert discovery, as well as contentious battles on class certification and summary judgment prior to trial.  As other courts have acknowledged, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004); *see also In re IBP, Inc. Sec. Litig.*, 328 F. Supp. 2d 1056, 1064 (D.S.D. 2004) (approving settlement and noting additional resources that would have been spent on discovery, class certification, and summary judgment).

**3.    The settlement was reached after extensive arm's-length negotiations with the aid of a skilled mediator.**

The parties' extensive arm's-length settlement negotiations and participation in mediation further demonstrate the fairness of the settlement, and that the settlement is not a product of fraud or collusion. Counsel for the parties each zealously negotiated on behalf of their clients, and a settlement was reached only after a full-day mediation session with Judge Andersen—a retired federal judge and skilled and experienced mediator in nationwide class actions such as this—and after weeks of follow-up negotiations overseen by His Honor.

**4.    The advanced stage of the proceedings and experience and opinion of counsel favor preliminary approval.**

This litigation has been pending for nearly a year and a half. The settlement was achieved after considerable time and expense and extensive fact discovery. The parties were able to assess the relative strengths and weaknesses of their respective positions, and to compare the benefits of the

proposed settlement to further litigation. Counsel, who have substantial experience in litigating class actions, and the Court are therefore adequately informed to evaluate the fairness of the settlement.[6]

C.      The proposed plan of notice satisfies the requirements of Rule 23 and due process and should be approved.

The Court "must direct notice in a reasonable manner to all class members who would be bound" by the settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice that is practicable under the circumstances." *See* Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). If class members can be identified and are given individual notice, there is no requirement for notice by publication or other means. "[N]otice by publication is only used when the identity and location of class members cannot be determined through reasonable efforts. . . ." *In re Wal-Mart Stores, Inc. Wage and Hour Litig.*, No. 06-02069, 2008 WL 1990806, at *2 (N.D. Cal. May 5, 2008). The notice must describe "the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009); *see also Reynolds v. Nat'l Football League*, 584 F.2d 280, 285 (8th Cir. 1978) (class members had been

---

[6]     The two remaining factors for consideration—Defendants' financial condition and the amount of opposition to the settlement—similarly favor preliminary approval.  First, there is no indication here that Defendants' financial condition would prevent them from satisfying the negotiated settlement fund. *In re Wireless*, 396 F.3d at 933; *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999) (confirming "defendant's ability to pay" in affirming reasonableness of class settlement).  However, the lack of applicable insurance coverage limits future potential recovery, further favoring the settlement reached here.  Next, though Class Members have yet to receive notice of the proposed settlement or an opportunity to object or request exclusion, Mr. Prater is confident that the Class will overwhelmingly support the Agreement in light of the benefits to be obtained from the settlement, and that opposition, if any, will be *de minimis* and may be addressed at the appropriate time during the parties' final approval briefing.

14

"duly advised of this proceeding and of the proposed settlement, and were afforded a full opportunity to present their objections. Due process requires no more.").

Here, the parties propose a notice program to be administered by a third-party class administrator that will use all reasonable efforts to provide direct mail notice to each Class Member who can be identified through reverse phone look-ups and to create a website devoted to the administration of the settlement.[7] This notice plan complies with Rule 23 and due process because, *inter alia*, it informs Class Members of: (1) the nature of the action; (2) the essential terms of the settlement, including the definition of the Class and claims asserted; (3) the binding effect of a judgment if the Class Member does not request exclusion; (4) the process for objection and/or exclusion, including the time and method for objecting or requesting exclusion and that Class Members may make an appearance through counsel; (5) information regarding Mr. Prater's request for an incentive award and reimbursement of his attorneys' fees and costs; (6) the procedure for submitting claims to receive settlement benefits; and (7) how to contact Class Counsel to make inquiries. Fed. R. Civ. P. 23(c)(2)(B); MANUAL FOR COMPLEX LITIGATION §21.312. In short, this notice plan ensures that Class Members' due process rights are amply protected, and thus should be approved. *See* Fed. R. Civ. P. 23(c)(2)(A); *Bredthauer*, 2012 WL 4904422, at *6 (approving class notice program comprised of direct mail notice and maintenance of settlement website).

## Conclusion

For the foregoing reasons, Mr. Prater respectfully requests that the Court preliminarily approve the settlement and enter the proposed order submitted concurrently herewith, appoint Mr. Prater as Class Representative, and appoint Greenwald Davidson Radbil PLLC as Class Counsel.

---

[7]     The proposed postcard notice to be mailed to each Class Member, the long-form Question & Answer notice that will be posted on the settlement Website, and the Claim Form to be mailed to each Class Member, are attached to the Agreement as Exhibits A, B, and C, respectively.

15

Dated: July 1, 2015

*/s/ Michael L. Greenwald*
**MICHAEL L. GREENWALD** (*pro hac vice*)
**JAMES L. DAVIDSON** (*pro hac vice*)
**AARON D. RADBIL** (*pro hac vice*)
GREENWALD DAVIDSON RADBIL PLLC
5550 Glades Road, Suite 500
Boca Raton, FL 33431
Telephone: 561.826.5477
Fax: 561.961.5684
mgreenwald@gdrlawfirm.com
jdavidson@gdrlawfirm.com
aradbil@gdrlawfirm.com

**ANTHONY LaCROIX**
LaCROIX LAW
4235 Baltimore Avenue
Kansas City, MO  64111
Telephone:  816.399.4380
Tony@lacroixlawkc.com

Counsel for Plaintiff and the Class

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been electronically filed on July 1,

2015, via the Court Clerk's CM/ECF system, which will provide notice to all counsel of record.


*/s/ Michael L. Greenwald*
**MICHAEL L. GREENWALD**

16